UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| PATRICK SHANE CANTRELL, | ) | |
| Plaintiff, | ) | |
| | ) | 3:12-cv-00654-RCJ-VPC |
| vs. | ) | |
| | ) | |
| EUREKA COUNTY et al., | ) | **ORDER** |
| Defendants. | ) | |

This case arises out of the termination of a lieutenant of the Eureka County Sheriff's Office ("ECSO"). Defendants have moved to dismiss. For the reasons given herein, the Court grants the motion.

**I.     FACTS AND PROCEDURAL HISTORY**

Plaintiff Patrick Shane Cantrell was employed as a deputy, sergeant, and lieutenant with ECSO from November 2006 until he was terminated on May 16, 2012. (*See* Compl. ¶¶ 11, 23, March 5, 2013, ECF No. 7). Plaintiff alleges he was terminated because of his potential interest in running for Sheriff (the office his supervisor, Defendant Kenneth E. Jones, held). (*See id.* ¶ 32). The only reason Jones gave for Plaintiff's termination in the letter he gave Plaintiff on May 16, 2012 was unspecified "alleged misconduct," based upon an alleged complaint by an unidentified person. (*Id.* ¶¶ 23–25). Plaintiff had never before been reprimanded except for an error he had made during a traffic accident investigation, any mention of which had been

removed from his personnel file at least six months before his termination. (*See id.* ¶ 33).  And although Plaintiff had taken 74 hours of sick leave in 2011 for personal treatment and to assist his wife after knee surgery, Plaintiff passed his January 13, 2012 physical and presented Jones with a signed note from his doctor indicating his complete fitness for duty in response to Jones's demand for such written assurance at a March 20, 2012 meeting. (*See id.* ¶¶ 12–14).  Neither the error during the traffic accident investigation or Plaintiff's previous sick leave appear to have had anything to do with the termination.  Plaintiff notes that Jones also asked him at the March 20, 2012 meeting about his past political activities and accused him of dividing the department. (*See id.* ¶¶ 15–18).[1]  Plaintiff admitted dissatisfaction with having been passed up for the position of Undersheriff, but he told Jones he had gotten over it and that he got along fine with the new Undersheriff, Defendant Keith Logan. (*Id.* ¶ 18).  Jones also asked Plaintiff about his future political aspirations, and Plaintiff responded that the next election for Sheriff was in 2014, and he had not discussed running for Jones's office with his wife. (*Id.* ¶ 19).  On May 15, 2012, the day before Jones terminated Plaintiff, Plaintiff asked non-party Detective David Hicks to meet him for lunch at the Eureka Café. (*See id.* ¶ 22).  A then-candidate for Eureka County Commissioner, non-party Peter Edera, then entered the café and spoke with Plaintiff concerning politics, elections, and county issues. (*Id.*).  Hicks reported the conversation to Defendants, and Plaintiff suspects that was the basis for his termination. (*Id.* ¶ 22).

When Plaintiff appealed his termination, Jones responded by offering to remove all mention of the termination from Plaintiff's file in exchange for Plaintiff signing a letter of resignation and promising not to "seek employment with any Eureka County governmental office or position." (*Id.* ¶¶ 28–29).  When Plaintiff counter-offered that he would agree to resign only if there were no stipulation regarding his future endeavors, Jones counter-offered that he would

---

[1] The Complaint skips from paragraph 15 to paragraph 18.

accept a narrowed restriction preventing only future employment with ECSO. (*Id.* ¶¶ 30–31). Plaintiff makes no further allegations concerning these negotiations, but presumably he rejected that counteroffer.

Plaintiff sued Eureka County (the "County"), Jones, and Logan in this Court on ten causes of action: (1) hostile workplace environment ("HWE") under Title VII; (2) equal protection violations under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (3) civil rights conspiracy under § 1985; (4) negligent infliction of emotional distress ("NIED"); (5) intentional infliction of emotional distress ("IIED"); (6) First Amendment violations pursuant to § 1983; (7) First Amendment retaliation pursuant to § 1983; (8) "failure to follow statutory procedure"; (9) "failure to follow departmental procedure"; and (10) retaliatory discharge pursuant to § 1983.  Defendants have moved to dismiss the first claim for failure to exhaust administrative remedies and have moved to dismiss the third claim for failure to state a claim.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In other words, under the modern interpretation of Rule 8(a), a plaintiff must not only specify a cognizable legal theory (*Conley* review), but also must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

III.   ANALYSIS

    A.   The Title VII Claim

Although filing a charge of discrimination with the EEOC is a jurisdictional prerequisite to a Title VII suit, "filing a *timely* charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. TWA*, 455 U.S. 385, 393 (1982) (emphasis added). The distinction is often of no practical significance, and courts sometimes still refer to the timeliness requirement as being jurisdictional. *See, e.g., Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 644 (9th Cir. 2003) ("To establish subject matter jurisdiction over his Title VII retaliation claim, [the plaintiff] must have exhausted his administrative remedies by filing a *timely* charge with the EEOC." (emphasis added)). But only the requirement to file a charge with the EEOC at some point in time is a jurisdictional prerequisite; the timeliness provision operates as a statute of limitations that may be waived, estopped, or equitably tolled, because it appears in a separate provision of Title VII than does the jurisdictional grant. *Zipes*, 455 U.S. at 393–94; *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104–05 (9th Cir. 2008) (citing *id.*). Title VII's exhaustion requirement limits the jurisdiction of federal courts to those claims that the EEOC has had an opportunity to examine, meaning those claims the EEOC actually adjudicates and any claims the plaintiff files with the EEOC but the EEOC fails to adjudicate or investigate. *Vasquez*, 349 F.3d at 644. In summary, there is federal jurisdiction over any Title VII claim a plaintiff has given the EEOC an opportunity to adjudicate, but a federal court should accept jurisdiction over, and then dismiss for failure to exhaust administrative remedies, any claim untimely presented to the EEOC, subject to waiver, estoppel, and equitable tolling.

A federal court may not consider incidents which are not included in the original EEOC charge unless they are "like or reasonably related to the allegations contained in the EEOC charge." *Green v. L.A. Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989). In

order to determine the scope of it jurisdiction over a Title VII claim, "the court inquires whether the original EEOC investigation would have encompassed the additional charges." *Id.* at 1476. Because Title VII is remedial, and individuals whom Title VII is designed to protect generally have little or no legal training, "charges filed before the EEOC" should be "construed liberally." *Id.*

Here, Plaintiff makes no allegation of having filed a charge of discrimination with the EEOC. Although failure to exhaust is an affirmative defense, Plaintiff also makes no allegation of discrimination based upon his identity under any protected category under Title VII, i.e., race, color, national origin, religion, or sex.

Plaintiff responds by arguing that he "inadvertently" entitled the claim as "Title VII" but wishes to assert a non-Title VII HWE claim, presumably under the common law of Nevada. There is no such cause of action. Under both federal and state law, such a claim is entirely a creature of statute. *See* 42 U.S.C. § 2000e-5; Nev. Rev. Stat. § 613.420. The Court dismisses the claim and denies leave to amend for futility as to a putative common law claim for HWE.

**B.     The § 1985 Claim**

A § 1985 claim only lies, as relevant here, for a conspiracy to violate equal protection rights under the Fourteenth Amendment with race- or other class-based animus, *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)), and Plaintiff does not allege any such animus. Plaintiff responds by again arguing that he "inadvertently" entitled the claim as "§ 1985" and only wishes to assert a claim for civil conspiracy. The Court dismisses this cause of action. Plaintiff may move for leave to amend, but he must present a proposed amended complaint for the Court's consideration.

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 9) is GRANTED.

IT IS SO ORDERED.

DATED this 30th day of July, 2013.

_____
ROBERT C. JONES
United States District Judge